BEAM, Circuit Judge, dissenting.
I readily concede that a duly selected jury fully apprised of the relevant facts and properly instructed in the law could have arrived at the result reached by the court today and by the very able trial *1078 court below. Since that circumstance did not occur, I dissent.
Daniel Ayala began working for CyberPower in 2006 as Vice President Worldwide Channel, specifically in charge of CyberPower's value added reseller channel. The written employment agreement specified that he was to be an at-will employee.
Ayala performed well as vice president of the value added channel, increasing sales from virtually nothing to nearly $50 million in annual sales by 2012. In part because of his sales successes, the parties executed another written employment agreement in late 2007 that clarified that the president or a vice president of CyberPower could alter the "at-will status" of the position.
Ayala received several substantial pay raises during this period and he made no secret of the fact that he aspired to become president of the company-when the original president, Robert Lovett decided to retire. And, Ayala asserts that Lovett assured him he would be considered for the position. But when Lovett retired in 2012, his son Brent was chosen as his successor.
At that point, Ayala decided to leave the company for a similar position within the industry. The Senior Lovett, however, persuaded Ayala to stay to mentor Brent, assuring him that if he stayed, Ayala would receive better compensation, a promotion and a written contract ensuring Ayala long-term employment. And, indeed, as noted by the court, Ayala was promoted to Executive Vice President and General Manager for Latin America with a tenure plan that would remain in place until "$150 million [in United States dollars] is reached." Ante at 1075. This term presumably requires that CyberPower's sales reach $150 million valued in United States dollars, whatever currency may have become involved in acquiring measurable sales. The contract language in no way specifies that it is an at-will contract, only that it is not a multiyear agreement, but arguably one that could be voided only "for cause."
Interestingly, the court, without analysis, would, in effect, turn this almost inscrutable terminology into an at-will clause in favor of CyberPower, notwithstanding the 2007 contract language to the contrary and the other bargaining vernacular also in contradiction that flowed between the parties.
The court concedes that the employment contract at issue is for Ayala's "new position as Executive Vice President and General Manager for Latin America." Ante at 1075. Then, it contends that only the very minor portion of the contract dealing with a "compensation plan for Dan Ayala," ante at 1076, contains language that applies to this current dispute.
To accomplish this unsupportable result, the court argues that "[t]he parties agree that before the [new] agreement, Ayala was [specifically] an at will employee." Ante at 1075 (emphasis added). While true, that circumstance is irrelevant insofar as being proof of an at-will status for Ayala arising from the terms and conditions of this new Executive Vice President position. Indeed, it better proves the contrary. In previous contracts, the at-will language was expressly included. In this new agreement, at-will status is not mentioned. The 2007 agreement allowed abrogation of at-will status by company vice presidents. Thus, the better argument is that had the parties contemplated an at-will status in the new employment contract, the contract would have specifically said so. This circumstance is likely an ambiguity that will require a fact finder to resolve.
The parties etched the language of this new agreement on a clean slate. They had earlier agreed that a CyberPower vice president was empowered to determine *1079 the existence or not of an at-will status. Ayala concededly became an Executive Vice President in this new employment contract dated November 29, 2012. And, while the court and CyberPower argue that the new contract did not alter Ayala's earlier at-will status, this is clearly mistaken. The new employment contract's failure to specify at-will status for Ayala extinguished Ayala's at-will status. I find no precedent that supports the idea that an employee's extinguished at-will status automatically returns unless it is specifically abrogated in a new employment contract. Accordingly, the district court's grant of summary judgment in favor of CyberPower is reversible error.
I dissent.